UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF PREMISES AT 90 BROADTURN ROAD UNIT 9 IN SCARBOROUGH | No. 2:24-mj-00282-KFW<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas Lapierre, being duly sworn, state:

*INTRODUCTION AND AGENT BACKGROUND*

1. I am a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA") and have been since 2007. I am presently assigned to the Portland, Maine, office and have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). During my time as a TFO with the DEA, I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, heroin, fentanyl, methamphetamine, diverted pharmaceuticals, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I have conducted or participated in, among other things, surveillance, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of recorded conversations relating to narcotics trafficking. I have authored drug-related search warrant requests and successfully executed such warrants resulting in the seizure of drugs and other contraband, including firearms. I have also assisted in the execution of

1

numerous drug-related search and arrest warrants. I have received extensive training in the field of narcotics enforcement and investigations. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs, including the use of the internet, internet platforms, applications, and cellular telephones to facilitate those activities.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for a residence located at 90 Broadturn Road Unit Number 9 in Scarborough, Maine (the "Subject Premises") as well as certain cellular telephones found at the Subject Premises (collectively "Subject Devices"), all as more particularly described in Attachment A of this Affidavit, for contraband and evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 846, 843, and 841, 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g)(3) ("Target Crimes"), as more particularly described in Attachment B of this Affidavit. The applied-for warrant would authorize forensic examination of Subject Devices for the purpose of identifying electronically stored data described in Attachment B. It would also authorize biometric scanning of Patrick McCarthy in order to access that data.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that the Target Crimes have been committed by one or more individuals. There is also probable cause to believe that the Subject Premises will contain Subject Devices and other contraband, evidence, and fruits and instrumentalities of the Target Crimes identified in Attachment B. Furthermore, there is probable cause that the Subject Devices contain evidence of one or more Target Crime.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested warrant.

## PROBABLE CAUSE

5. The DEA is investigating drug trafficking activities and a drug-trafficking-related shooting incident at 27 Meetinghouse Road in Biddeford, Maine, which occurred in the early morning hours of May 28, 2024. The DEA is also investigating related drug trafficking activities at 90 Broadturn Road, Unit Number 9 in Scarborough, Maine.

### Background and Prior Authority

6. On May 31, 2024, the DEA applied for and obtained authority from this Court in 2:24-mj-179-KFW to search 27 Meetinghouse Road and cellular telephones of identified occupants found at that location at the time of execution. The affidavit submitted in support of that search warrant is attached hereto as Exhibit 1 and expressly incorporated herein for its factual statements. That affidavit explained, among other things, statements of John Doe regarding the shooting and the known residents of 27 Meetinghouse Road (the location of the shooting), who at that time were known to be: Robert Marek, Patrick McCarthy, Meagan Hebert, Brian Trombley, and Kallie Bryant.

7. On June 4, 2024, the DEA applied for and obtained authority from this Court in 2:24-mj-183-KFW to search premises at 90 Broadturn Road Unit 9 in Scarborough, and also cellular telephones of occupants found at that location at the

3

time of execution. The affidavit submitted in support of that search warrant is attached hereto as Exhibit 2 and expressly incorporated herein for its factual statements. That affidavit explained, among other things, past information as to 90 Broadturn Road and as to Patrick McCarthy's use and occupation of that address before and after the shooting at 27 Meetinghouse Road.

*Execution of Warrant at 90 Broadturn Road Unit 9*

8. On June 6, 2024, the DEA and partner agencies executed the search warrant at 90 Broadturn Road Unit 9. Patrick McCarthy was present at the time. In a first-floor bedroom associated through various forms of identification with Patrick McCarthy, agents located approximately 322 grams of powdered substance that appeared to be fentanyl powder. Based on my training and experience, this quantity is far in excess of what someone would possess purely for personal use. A male identified as Patrick McNamara was also present at 90 Broadturn Road at the time of execution. He was located in an upstairs bedroom at that location. Officers forced entry into the room. McNamara was inside the room and it appeared he was covered in a white powder. Officers could see what appeared to be a blender on the floor, nearby McNamara.

9. McCarthy was interviewed, following a Miranda warning. McCarthy stated that he had been dealing drugs, including fentanyl, for a supplier he identified by first name during this interview and will hereinafter be referred to as John Doe 2. He explained that he would hold drugs for this individual and distribute as directed, with prices and amounts being arranged by the supplier. He stated that he was working with Kallie Bryant in this endeavor. He allowed officers to review contacts in

his cellular phone and provided a contact for Kallie Bryant. He stated that as of May 28, 2024, he was in possession of a purple handgun that he was holding for his supplier. At that point he was staying at 27 Meetinghouse Road. Two individuals arrived, one of them wearing a mask. They complained about quantities of drugs previously obtained. McCarthy said he gave them a box that did not contain drugs under the guise that it did contain drugs. The two intruders left. He and Robert Marek were concerned they would return and so McCarthy armed himself with the handgun he had been holding for John Doe 2. The intruders then returned, forced their way inside, and McCarthy fired multiple rounds. An intruder was hit and McCarthy and Marek dragged him outside and left him on the residence's porch. He also stated he had obtained the fentanyl from John Doe 2 that was found at Broadturn Road on June 6th.

10. McNamara was also interviewed. He stated he had heard law enforcement and attempted to destroy fentanyl in a blender in the upstairs bedroom and, in doing so, got fentanyl on his person. In my training and experience, a user of fentanyl would not likely be blending fentanyl with another substance and, therefore, I believe that McNamara was engaged in activities related to drug trafficking at the time he was located. While he was speaking with officers, McNamara showed signs of opiate intoxication and was transported for medical treatment.

11. Meaghan Hebert was also present at 90 Broadturn Road at the time of execution. She was identified as the romantic partner of McCarthy. She too identified McCarthy as a distributor of fentanyl and described him working with both Kallie Bryant and John Doe 2 in relation to this drug distribution activity. She stated that

approximately two weeks prior to the shooting at 27 Meetinghouse Road, she had seen McCarthy had a purple-colored handgun in a safe that also contained drugs. McCarthy told her at the time that he was holding the gun for John Doe 2. She identified herself as a drug user and said she had seen McCarthy deal "stick" quantities of fentanyl.[1]

12.  Multiple cellular phones were seized during execution of the Broadturn Road warrant.[2]

*Execution of Warrant at 27 Meetinghouse Road*

13.  On June 6, 2024, the DEA and partner agencies also executed the search warrant at 27 Meetinghouse Road. Brian Trombley, Kallie Bryant, and Robert Marek were present at the time.

14.  Kallie Bryant was interviewed, after she requested to speak to law enforcement officers. She stated that she worked with McCarthy to distribute fentanyl that they obtained from John Doe 2. Brian Trombley was interviewed. Trombley stated he was aware that Kallie Bryant had been obtaining drugs from McCarthy and selling a portion of those drugs and also that he was aware she possessed a tablet device that she used to communicate with people. He stated he had driven Kallie Bryant during the evening of May 27th and that she had drugs that evening to distribute to a male named "Chris." This male "Chris" and another unknown male had entered their vehicle at a gas station in Saco and he (Trombley) drove them around.

---

[1] I know from my training and experience that a "stick" of fentanyl is commonly considered a 10-gram cylinder shaped package of fentanyl.

[2] For simplicity this affidavit will at times refer to 90 Broadturn Road or Broadturn Road in reference to 90 Broadturn Road, Unit #9.

He heard one male threaten to come to their residence and harm them during this ride. He said Bryant had dealt drugs to Chris in the past and had provided less drugs than what Chris had agreed to purchase. Trombley believed Bryant provided drugs to Chris during this drive and they then drove the two males back to the gas station. Trombley and Bryant returned to 27 Meetinghouse Road. He later heard Bryant receive a call and believed that a male had threatened to "shoot up" the house. Later, Trombley said he heard a commotion downstairs and Hebert ran upstairs and reported two males were downstairs threatening to rob and harm them. Hebert went back down later in the night and he later heard multiple gunshots and called 911.

15. Robert Marek was also interviewed. He described that an individual named Chris showed up with another unknown male complaining to McCarthy about drugs. He said McCarthy provided them with an empty box to get them to leave. Approximately 10-15 minutes later, Marek said he and McCarthy went to check the front door to see if it was secure. An intruder approached the house; McCarthy ran further inside the house; Marek was then knocked down by someone entering through the door. At that point, McCarthy started shooting.[3]

*Information Regarding Renewed Drug Trafficking at 90 Broadturn Road*

16. By September of 2024, the Scarborough Police Department was receiving information about 90 Broadturn Road, Unit 9, suggesting drug-trafficking-related activity may have resumed at that residence. For example, neighbors complained

---

[3] The DEA has also developed additional facts during this investigation, not all of which are summarized herein. For example, following the execution of these residential search warrants, the DEA also searched electronic devices and conducted additional interviews.

about a high volume of short-term vehicle traffic at the residence, which, in my experience, is frequently the case at locations visited by drug purchasers.

17. On September 10, 2024, DEA agents and officers with the Scarborough Police Department conducted surveillance at the Subject Premises related to this investigation. An individual, identified herein as John Doe 3, was observed arriving at the Subject Premises on a bicycle, and being greeted at the door by an individual who appeared to be Patrick McCarthy. Approximately 30 minutes later, John Doe 3 was seen leaving the residence. Officers observed he was operating his bicycle on the wrong side of the road and approached him. John Doe 3 provided consent to search his person during the resulting encounter. During that search, officers recovered a small quantity of suspected crack cocaine and approximately 2 grams of suspected fentanyl from inside his sock. He was also found in possession of other pills.

18. John Doe 3 was detained and transported to the police department. There, he was advised of his Miranda rights and agreed to speak with officers. He ultimately stated he had traveled to Scarborough that day to meet with a male he knows as "Pat." He gave a physical description of "Pat" that was generally consistent with that of Patrick McCarthy. He said he had entered the residence at the Subject Premises that day and bought $140 worth of fentanyl and $20 worth of cocaine from "Pat" in the residence. John Doe 3 stated he had met "Pat" via a friend of his, who also

sometimes buys drugs from the same individual.[4] John Doe 3 also provided a phone number for "Pat" and indicated he had communicated, at that number, with "Pat."

19.     The suspected drugs seized from John Doe 3 were field tested, which showed presumptive positive tests for cocaine and fentanyl.

*Additional Information Regarding Requested Search Warrant*

20.     Based upon my training and experience and the facts of this investigation, there appears to be a multi-month relationship between McCarthy and the Subject Premises. It appears that he is again distributing drugs and doing so, again, from the Subject Premises. In my training and experience, it is not uncommon for those involved in drug trafficking to continue their activity, even after they know that their activities are being investigated by law enforcement.

21.     Based upon my training and experience and the facts of this investigation, I believe it is likely that McCarthy is storing drugs, proceeds, packaging items, and other "tools of the trade" of drug trafficking at the Subject Premises. Such items are often stored at or near the location a dealer is using to distribute drugs, so that the distributor can meet the needs of multiple customers. For example, based on physical surveillance during the reported transaction with John Doe 3, there is no reason to believe that McCarthy sent someone to a different location to obtain the drugs he provided to John Doe 3 inside the Subject Premises.

---

[4] John Doe 3 has a criminal history but no known convictions since 2000. He received summons for drug possession as a result of the drugs seized from his person. He was likely providing information with a desire to earn a more favorable outcome as to any criminal charges arising from his drug possession.

22. Via this application, the DEA is seeking authority to also search the Subject Premises for McCarthy's cellular telephone(s). Law enforcement agents will endeavor to search and seize only the cell phone(s) which, upon reasonable inspection and/or investigation conducted during the execution of the search, reasonably appear to be possessed by Patrick McCarthy and to contain the evidence in Attachment B. McCarthy previously admitted to using cellular devices as part of his drug trafficking activity and John Doe 3 described communicating with "Pat" via phone. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying cell phones that reasonably appear to be possessed or used by Patrick McCarthy and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

23. I am also seeking authority to obtain, from Patrick McCarthy, the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock Subject Devices. I seek this authority because I know that most cellular phone manufacturers now offer users the ability to unlock devices through these types of biometric features in lieu of other passwords or codes. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprint. Similarly, if a device is equipped with facial recognition, a user may enable the ability to unlock the device through his or her face. In my experience, users of cellular phones often enable these types of biometric

features as a convenient way of unlocking a device. Passwords or codes to unlock the Subject Devices, meanwhile, may not otherwise be available to law enforcement, making use of biometric features necessary to effectively and efficiently execute the warrant. Thus the warrant sought would permit law enforcement to press or swipe the fingers or thumbs of McCarthy to a fingerprint scanner of the Subject Devices and or hold the Subject Devices in front of the face of McCarthy to activate facial recognition features, for the purpose of unlocking Subject Devices.

## CONCLUSION

24. I respectfully request that the Court authorize DEA special agents or task force officers or their authorized representatives, including, but not limited to, other law enforcement agents and technicians assisting in the above-described investigation, to search the Subject Premises for Subject Devices and other items identified in Attachment B, and to search the Subject Devices, also as identified in Attachment B.

Respectfully submitted,

Thomas Lapierre
TFO, U.S. Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Sep 12, 2024

City and state: Portland, Maine

Judge's signature

David M. Cohen, U.S. Magistrate Judge
Printed name and title

11